UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MARIO JEROME HICKS,**

    **Plaintiff,**

v.            Case No: 6:23-cv-1625-PGB-EJK

**PROGRESSIVE EXPRESS
INSURANCE COMPANY and
ALLSTATE FIRE AND
CASUALTY INSURANCE
COMPANY,**

    **Defendants.**
_____/

## ORDER

This cause comes before the Court on Plaintiff Mario Jerome Hicks' ("**Plaintiff**") Motion to Remand (Doc. 13 (the "**Motion**")) and Defendant Progressive Express Insurance Company's ("**Defendant**") response in opposition (Doc. 16 (the "**Response**")). Upon consideration, the Motion is due to be granted.

**I. BACKGROUND**

This case arises out of injuries Plaintiff sustained from a motor vehicle accident that occurred on February 24, 2022. (Doc. 1-1).

Ultimately, Plaintiff initiated this lawsuit in state court on March 21, 2023. (Doc. 1-3, pp. 4–7). Shortly after filing suit, on April 17, 2023,[1] Plaintiff presented

---

[1] Defendant appears to be mistaken as to when Plaintiff sent its demand letter. (Doc. 16, p. 2). Defendant states that the demand for settlement was sent "on April 17, 2022, prior to [Plaintiff] filing suit." (*Id.*). However, the demand letter attached to Defendant's Notice of

Defendant a demand letter offering to settle the matter for $300,000, the underinsured motorist policy limit. (Doc. 1-7 (the "**Letter**")). Then, on July 31, 2023, Plaintiff filed its Amended Complaint in state court asserting a sole cause of action for negligence and seeking damages exceeding $50,000. (Doc 1-1, pp. 4–8). Finally, on August 25, 2023, Defendant removed the case to this Court based on diversity jurisdiction. (Doc. 1, pp. 1–11). Now, Plaintiff moves to remand on the ground that Defendant fails to prove that the amount in controversy exceeds the jurisdictional threshold of $75,000.00. (Doc. 13). Defendant responded in opposition (Doc. 16), and the matter is ripe for review.

## II.   STANDARD OF REVIEW

28 U.S.C. § 1441(a) allows a defendant to remove a civil action from state court to federal district court where the basis for the underlying claim is federal question jurisdiction or diversity jurisdiction. *Hawkinson v. State Farm Mut. Auto. Ins. Co.*, 325 F. Supp. 3d 1293, 1296 (M.D. Fla. 2018).

Diversity jurisdiction requires complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000. 28 U.S.C. § 1332(a). If the plaintiff does not plead a specific amount of damages, the removing defendant bears the burden of establishing that the jurisdictional threshold is met by a preponderance of the evidence. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208–09 (11th Cir. 2007); *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)

---

Removal clearly states the date was April 17, *2023*, a year later—which was after the suit had already been filed. (Doc. 1-7). Accordingly, the Court relies on the date provided on the attached demand letter itself.

(per curiam). Likewise, when a "plaintiff contests [a] defendant's [alleged] amount in controversy . . . the district court must find 'by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (quoting 28 U.S.C. § 1446(c)(2)(B)). That said, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

Beyond the face of the complaint, a district court may consider the defendant's notice of removal and other relevant evidence submitted by the parties to determine the amount in controversy. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). "If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction." *Lowery*, 483 F.3d at 1211.

## III. DISCUSSION

The crux of the parties' remand dispute surrounds the amount in controversy requirement for diversity jurisdiction. (Docs. 13, 16).[2] Plaintiff argues this action must be remanded because Defendant has not met its burden of

---

[2] Accordingly, the court tailors its discussion to the issue at hand. Nonetheless, considering the papers before it, the Court finds the parties' citizenship diverse.

establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. (Doc. 13). The court agrees.[3]

In support of its contention that the amount in controversy surpasses the jurisdictional threshold, Defendant largely relies on Plaintiff's Letter requesting $300,000 to settle the matter and the general categories of damages Plaintiff alleges in its Amended Complaint. (Doc. 16).[4] The Letter, which appears to have been drafted by Plaintiff's counsel, summarizes various medical assessments and recommendations made to Plaintiff regarding his condition. (Doc. 1-7). In addition, the Letter delineates the cost of Plaintiff's medical expenses to date, proposes a costly future surgery, and suggests a highly speculative calculation for pain and suffering that amounts to around $2.4 million dollars. (*Id.*). The Letter concludes with Plaintiff's offer to settle the matter for the policy limit for underinsured motorists—$300,000. (*Id.*).

---

[3]   However, to the extent Plaintiff argues that Defendant's valuation of the case at a mere $21,750.00 proves the amount in controversy is not met, the Court finds such a contention unpersuasive. (Doc. 13, p. 5). As various courts within the Eleventh Circuit have previously held, "a defendant's settlement offer is not evidence of a low amount in controversy because . . . such an offer is likely to reflect defendant's belief that the plaintiff may be unable to establish liability." *Wilt v. Depositors Ins. Co.*, No. 13-CV-1502-ORL-36, 2013 WL 6195768, at *8 (M.D. Fla. Nov. 26, 2013). Thus, Defendant is correct that the amount in controversy inquiry implicates "what is in controversy in the case," not Plaintiff's likelihood of success on the merits or Defendant's perceived value of the case. (*See* Doc. 16, pp. 7–8); *Pretka*, 608 F.3d at 751; *Lutins v. State Farm Mut. Auto. Ins. Co.*, No. 10-CV-817-J-99MCR, 2010 WL 6790537, at *2 n.3 (M.D. Fla. Nov. 4, 2010).

[4]   Defendant also attempts to argue that Plaintiff's refusal to stipulate that he would not seek damages in excess of $75,000 is indicative that the amount in controversy exceeds the requisite threshold. (Doc. 16, p. 11). However, "[t]here are several reasons why a plaintiff would not so stipulate" that a claim does not exceed $75,000, and "a refusal to stipulate standing alone does not satisfy [defendant's] burden of proof on the jurisdictional issue." *Williams*, 269 F.3d at 1320.

Courts often consider offers for settlement when determining whether the amount in controversy for diversity jurisdiction has been met. *E.g.*, B*urns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). However, "[s]ettlement offers do not automatically establish the amount in controversy for purposes of diversity jurisdiction." *Lamb v. State Farm Fire Mut. Auto. Ins. Co.*, No. 10-CV-615-J-32JRK, 2010 WL 6790539, at *2 (M.D. Fla. Nov. 5, 2010). In order to sufficiently establish the amount in controversy, a settlement demand must provide an honest assessment of damages, with specific information to support a plaintiff's request, rather than simply "reflect [mere] puffing and posturing." *E.g.*, *id.*; *see Collazo v. Progressive Select Ins. Co.*, No. 20-25302-CIV, 2021 WL 81666, at *3 (S.D. Fla. Jan. 11, 2021) ("Courts have held that a removing party may rely on a pre-suit demand to satisfy the jurisdictional amount if (1) 'the document reflects an honest assessment of damages,' and (2) the plaintiff 'does not contest the veracity of the information contained in the document despite having an opportunity to do so.'" (quoting *Perez-Malo v. First Liberty Ins. Corp.*, 2017 WL 7731958, *3 (S.D. Fla. June 8, 2017))).

In this case, the Court finds that Plaintiff's Letter offering to settle the matter does not sufficiently support the conclusion that the amount in controversy exceeds the minimum threshold for diversity jurisdiction. Here, the Letter merely provides sufficient factual support that the medical expenses to date total $62,689.90, which falls below the requisite jurisdictional threshold. (Doc. 1-7). Therefore, Defendant argues that the Court must consider the possibility of future

5

surgeries and a jury award for pain and suffering in order to conclude that the amount in controversy exceeds $75,000. (Docs. 1-7, 16). However, considering the information—or lack thereof—before it, the Court finds such an argument far too speculative and unconvincing.

With regards to additional future expenses, the Letter only indicates that Plaintiff and his P.A. discussed "[t]he possibility of an L4-5 laminectomy" and Plaintiff was "considering [it]." (Doc. 1-7). Although the aforementioned surgery has a cost of $110,000, the parties have not set forth any evidence to support the likelihood of its occurrence—in fact, the surgery has yet to even be recommended as necessary, much less scheduled. (*Id.*). As such, it is a mere "hypothetical future medical expense." *Pennington v. Covidien LP*, No. 19-CV-273-T-33AAS, 2019 WL 479473, at *2 (M.D. Fla. Feb. 7, 2019); *see, e.g.*, *Lima v. Litfin*, No. 21-CV-1722-VMC-TGW, 2021 WL 3185966, at *2 (M.D. Fla. July 28, 2021); *Johnson-Lang v. Fam. Dollar Stores of Fla., LLC*, No. 21-CV-902-VMC-CPT, 2021 WL 1625167, at *2 (M.D. Fla. Apr. 27, 2021). Considering courts analyze the amount in controversy at the time of removal and not that in the future, the aforementioned cost of an uncertain prospective surgical procedure is too speculative for the Court's consideration at this juncture. *See Pretka*, 608 F.3d at 751; *Pennington*, 2019 WL 479473, at *2 (finding that a $110,000 surgery, unscheduled and not yet deemed necessary, was too speculative to be considered in the court's jurisdictional analysis).

Further, albeit without any legal authority to support his position, Plaintiff indicates in the Letter that he will request a jury award over $2.4 million for pain and suffering. In order to support such a request, Plaintiff stated the following:

> Please be advised that our client was 36 years old at the time of crash and continues to suffer from the permanent injuries he sustained in this motor vehicle collision as a result of your insured's negligence. According to the Vital Statistics of the United States, 2021 Life Tables, Volume 53, Section 6, our client has a life expectancy of another 40.56 years. In the event this claim is not resolved in accordance with the terms and conditions of this demand, Mr. Hicks will present a customary per diem argument to the jury for non-economic damages. A fair and reasonable amount to compensate Mr. Hicks for his pain, suffering, mental anguish, and inconvenience since February 24, 2022, is $10 per hour for every waking hour he has spent suffering with pain caused by the injuries he sustained in this crash. (Generally, 16 waking hours per day).

(Doc. 1-7, p. 7). As such, the total calculation for past pain and suffering amounts to $66,720.00, and for future pain and suffering to $2,368,704.00. (*Id.*). Now, Defendant relies on Plaintiff's prospective jury request for pain and suffering to support Defendant's contention that the requisite amount in controversy exists. (Doc. 16, pp. 8–10).

Ultimately, the Court finds Plaintiff's calculation of a possible jury award, in support of its settlement offer, to be mere posturing and not specific to the case or facts at hand. *See Nelson v. Black & Decker (U.S.), Inc.*, No. 16-cv-869-SCB-JSS, 2015 WL 12259228, at *2 (M.D. Fla. Aug. 31, 2015) ("Even if [d]efendants had cited to specific jury verdicts in cases that involve similar injuries to those suffered in this case, [the court] would still question how illuminating past jury verdicts in other cases can be on the actual amount in controversy in *this* case." (emphasis

7

added)); *Lima*, 2021 WL 3185966, at *2 (finding that defendants' attempt to use plaintiff's pain and suffering and a "medical provider's estimate of $337,732.00 in future medical expenses . . . . too speculative to include in the amount in controversy calculation and . . . [nothing more than] a mere negotiation tactic"). In fact, Plaintiff's counsel admittedly stated the calculation for pain and suffering was based on a "customary per diem argument" to be made to a jury. (Doc. 1-7, p. 7). Such a boilerplate calculation will not suffice to establish the requisite amount in controversy in the case at bar. *See Reyes v. Stockhill*, 568 F. Supp. 3d 1288, 1294 (M.D. Fla. 2021) (highlighting that Plaintiff counsel's reliance on a "customary per diem argument" to suggest an appropriate amount for pain and suffering "reflects mere postering" and "is not specific to [plaintiff's] damages in *this* case" (emphasis added)). Simply put, courts will not engage in sheer speculation in order to value damages for pain and suffering. *See, e.g.*, *id.*; *Lima*, 2021 WL 3185966, at *2; *Nelson*, 2015 WL 12259228, at *3–4.

In sum, the concrete damages in this case, at most, equate to $62,689.90, and insufficient information has been provided about the other categories of damages. Accordingly, the Court does not find that Defendant has established the requisite amount in controversy by a preponderance of the evidence and thus, remand is warranted. In any event, even employing the Court's judicial experience and reasonable inferences, "[t]he high level of uncertainty regarding the amount in controversy must therefore be resolved in favor of remand." *See Candelario v.*

8

*USAA Cas. Ins. Co.*, No. 20-CV-2373, 2021 WL 406262, at *2 (M.D. Fla. Feb. 5, 2021); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Remand (Doc. 13) is **GRANTED**.

2. This case is **REMANDED** to the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, Florida for further proceedings.

3. The Clerk of Court is **DIRECTED** to send a certified copy of the Order to the Clerk of Court for the Eighteenth Judicial Circuit in and for Seminole County, Florida.

4. The Clerk of Court is **DIRECTED** to close the case.

**DONE AND ORDERED** in Orlando, Florida on January 4, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties